UNITED STATES of America, Appellee,

v.

William Clyde LEWIS, Appellant.

No. 76–1238.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1976.

Decided Dec. 28, 1976.

Certiorari Denied Feb. 22, 1977.

See 97 S.Ct. 1149.

Thomas M. Bradshaw, Asst. Federal Public Defender, Kansas City, Mo., for appellant.

Robert B. Schneider, Asst. U. S. Atty., Kansas City, Mo., for appellee; Bert C.

Hurn, U. S. Atty., Anthony P. Nugent, Kansas City, Mo., on brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, and BRIGHT and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Appellant William Clyde Lewis was indicted on two counts of bank robbery.[1] Count I alleged that appellant and Sylvester Young robbed the Goppert Bank and Trust Company in Kansas City, Missouri, on or about May 16, 1975. Count II alleged that appellant and Young robbed the Central Bank in Kansas City on or about August 28, 1975. In a jury trial in which he was tried separately appellant was convicted of the offense charged under Count I and was sentenced to twenty-five years imprisonment. The jury was unable to reach a verdict on the offense charged in Count II, and this count was dismissed by the District Court.[2] On appeal, appellant contends (1) that he should have been granted a severance of counts, (2) that identification evidence should have been suppressed, (3) that his counsel should have been permitted to voir dire the jury, and (4) that the government made improper remarks in closing. We affirm the judgment of conviction.

## I. Severance of Counts

Prior to trial appellant moved for a severance of counts, which the District Court denied. Appellant concedes that the counts were properly joined under Fed.R.Crim.P. 8(a) because the offenses charged were of "similar character," but he contends that it was an abuse of discretion to deny his motion for severance because of the degree of prejudice which necessarily resulted from a joint trial. See Fed.R.Crim.P. 14.[3]

Appellant's claim of prejudice is based upon two separate grounds: (1) that the

---

1. 18 U.S.C. §§ 2 and 2113(a).

2. The Honorable William R. Collinson, United States District Court for the Western District of Missouri.

3. Fed.R.Crim.P. 14 provides in pertinent part that:

 If it appears that a defendant or the government is prejudiced by a joinder of offenses . . ., the court may order an election or separate trial of counts, . . .

| DATE DUE | ROOM NO. |
|---|---|

AUTHOR　　　WRITE FIRMLY

TITLE

| CALL NO. | | | COPY NO. |
|---|---|---|---|
| VOL. | NO. | ED. | YEAR |

STUDENT ☐　　OFFICER ☐　　OTHER ☐

**DO NOT WRITE IN THIS SPACE**

| SIGNATURE | TODAY'S DATE |
|---|---|

ADDRESS　　　PLEASE PRINT

| CITY | TEL. |
|---|---|

# HARVARD LAW SCHOOL
# LIBRARY

evidence of each robbery would have cumulative effect in the minds of the jurors which would prevent them from making an independent determination of guilt or innocence on each count; and (2) that a joint trial impermissibly interfered with his trial strategy of asserting an alibi only as to Count II.[4]

The question of prejudice arising from joinder is addressed to the sound discretion of the District Court, and we may reverse only upon a finding of clear prejudice and abuse of discretion. *United States v. Riley,* 530 F.2d 767, 770 (8th Cir. 1976); *United States v. Hoog,* 504 F.2d 45, 49 (8th Cir. 1974), *cert. denied,* 420 U.S. 961, 95 S.Ct. 1349, 43 L.Ed.2d 437 (1975).

In this case, appellant failed to renew his motion for severance either at the close of the government's case or at the conclusion of all the evidence. Such failure ordinarily constitutes waiver of the claim that a severance should have been granted. *United States v. Johnson,* 540 F.2d 954 at 959 (8th Cir. 1976); *United States v. Verdoorn,* 528 F.2d 103, 106 (8th Cir. 1976); *United States v. West,* 517 F.2d 483, 484 (8th Cir.), *cert. denied,* 423 U.S. 948, 96 S.Ct. 365, 46 L.Ed.2d 283 (1975); *United States v. Franklin,* 452 F.2d 926, 928 (8th Cir. 1971); *United States v. Porter,* 441 F.2d 1204, 1212 (8th Cir.), *cert. denied,* 404 U.S. 911, 92 S.Ct. 238, 30 L.Ed.2d 184 (1971). We nonetheless review the claims of prejudice under the plain error doctrine. Fed.R.Crim.P. 52(b).

### A.

Here, the evidence of each crime was simple and distinct, and there was little

or provide whatever other relief justice requires.

4. Appellant argues that since he had offered witnesses to show he could not have been a participant of the robbery charged under Count II, the jury would draw an unfavorable inference from his failure to supply a similar alibi as to Count I.

5. In *United States v. Lotsch,* 102 F.2d 35, 36 (2d Cir.), *cert. denied,* 307 U.S. 622, 59 S.Ct. 793, 83 L.Ed.2d 1500 (1939), Judge Learned Hand stated:

danger of the jury cumulating the evidence. *See Robinson v. United States,* 148 U.S. App.D.C. 58, 459 F.2d 847, 856 (1972); *United States v. Lotsch,* 102 F.2d 35, 36 (2d Cir.), *cert. denied,* 307 U.S. 622, 59 S.Ct. 793, 83 L.Ed. 1500 (1939);[5] *cf. United States v. Foutz,* 540 F.2d 733 (4th Cir. 1976); *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85, 91 (1964). Moreover, the failure of the jury to arrive at a verdict on Count II supports an inference that the evidence of one crime did not have a cumulative effect upon the jury. The jury obviously discriminated between the evidence on each count. *See United States v. Berlin,* 472 F.2d 13, 15 (9th Cir. 1973); *Fernandez v. United States,* 329 F.2d 899, 906 (9th Cir.), *cert. denied,* 379 U.S. 832, 85 S.Ct. 62, 13 L.Ed.2d 40 (1964).

### B.

Joinder of multiple counts arising from separate occurrences does expose a defendant to some potential difficulty in presenting separate and distinct defenses. Thus, a defendant may be willing to take the stand and testify as to one count but might prefer to remain silent and put the government to its proof on another count. The risk of exposing himself to cross-examination on one count in order to testify as to the other presents a dilemma which obviously contains the seeds of prejudice. *See Baker v. United States,* 131 U.S.App.D.C. 7, 401 F.2d 958, 976–77 (1968), *cert. denied,* 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970); *Cross v. United States,* 118 U.S.App.D.C. 324, 335 F.2d 987, 989 (1964).

Appellant did not take the stand nor does he contend that he would have done so if the counts had been tried separately. He

When the accused's conduct on several separate occasions can properly be examined in detail, the objection disappears, and the only consideration is whether the trial as a whole may not become too confused for the jury. * * * Here we can see *no prejudice from joining the three charges: the evidence as to each was short and simple; there was no reasonable ground for thinking that the jury could not keep separate what was relevant to each. The joinder was therefore proper * * *.

gave the District Court no notice of this claim of prejudice. We do not regard the notice of alibi as to one count as providing such notice. If a severance were mandatory whenever a defendant chose to utilize a defense as to only one count, "a court would be divested of all control over the matter of severance and the choice would be entrusted to the defendant." *See Holmes v. Gray,* 526 F.2d 622, 626 (7th Cir. 1975); *Baker v. United States, supra,* 401 F.2d at 976. *See also Johnson v. United States,* 356 F.2d 680, 682 (8th Cir.), *cert. denied,* 385 U.S. 857, 87 S.Ct. 105, 17 L.Ed.2d 84 (1966).[6] It is speculative to assume from the verdict that failure to adduce evidence of an alibi on Count I created an inference of guilt in the minds of the jury. *Cf. Wangrow v. United States,* 399 F.2d 106 (8th Cir.), *cert. denied,* 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968). The District Court carefully admonished the jury in its opening instructions that the defendant never had the duty of producing any evidence or calling any witnesses. No challenge is made to the District Court's charge to the jury. We find no abuse of discretion in the denial of appellant's motion nor in the subsequent failure to order severance after evidence had been adduced.

## II. *Identification Evidence*

At trial three employees of the Goppert Bank who were present at the bank during the robbery made positive in-court identifications of appellant as one of the robbers and also testified that they had made pretrial identifications of him at a lineup. Appellant contends on appeal that this evidence should have been suppressed on the ground the pretrial identifications were the result of unduly suggestive police procedures.

The District Court conducted an evidentiary hearing on appellant's motion to sup-

press the identification testimony. At that hearing police officers ·and F.B.I. agents testified that on August 29, 1975, appellant was exhibited in a lineup with five other Negro males. Each witness was asked not to discuss his or her conclusions with the other witnesses. Each witness viewed the lineup separately. A form was provided on which the witness was asked to note the identification of a. suspect by marking a box the number of which corresponded with a tag hanging from the suspect's neck. No indication of any kind was given to the witness that a particular man in the lineup was believed to be the robber. The three Goppert bank employees who later identified appellant in court selected him from the lineup as the robber.[7]

It is appellant's contention that while there was no evidence of impermissibly suggestive conduct by police during the lineup, the makeup of the lineup was calculated to pinpoint appellant as the probable suspect. The same witnesses who identified him at the lineup had described the robber to police in varying heights and weights; they all agreed that he was a Negro male with light complexion and a receding hairline. We have studied this issue carefully in light of the three months which had elapsed between the robbery and the lineup.[8]

A color photograph of the lineup was before the court during the evidentiary hearing and was a part of the record on appeal. After hearing the evidence, the District Court found that it was "a fair lineup, that it was carried out according to mandate of the law and there was no possible prejudice to the defendant."

 A lineup should be conducted so that any identification made by a witness is not tainted by suggestive procedures. When such suggestiveness occurs, the court

---

6. In *Johnson v. United States,* 356 F.2d 680, 682 (8th Cir.), *cert. denied,* 385 U.S. 857, 87 S.Ct. 105, 17 L.Ed.2d 84 (1966), this Court said, "[D]enial of severance is not grounds for reversal unless clear prejudice and abuse of discretion is shown. * * * It is not enough simply to show that such joinder makes it more difficult to defend."

7. Approximately eight witnesses viewed the August 29 lineup.

8. *See* note 11, *infra.*

must examine the lineup to determine whether it "was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). If the lineup is found somewhat suggestive but not unconstitutionally so, the court must then inquire as to "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." [9] *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). *See United States v. Jackson*, 166 U.S.App.D.C. 166, 509 F.2d 499, 505 (1974); *Israel v. Odom*, 521 F.2d 1370, 1373 (7th Cir. 1975); *United States ex rel. Kirby v. Sturges*, 510 F.2d 397, 402–03 (7th Cir.), *cert. denied*, 421 U.S. 1016, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975). *See also Sanchell v. Parratt*, 530 F.2d 286, 293 (8th Cir. 1976).

 There was nothing impermissibly suggestive about the clothing of the men in the lineup. All were Negro males. While appellant was the shortest of the six men, he was not significantly so; none of the men was unusually tall and all were within a range of about four inches. While appellant was of lighter complexion than the others and had a more receding hairline, we do not think these differences were enough to make the identification proce- dures impermissibly suggestive. *Cf. United States v. Sanders*, 156 U.S.App.D.C. 210, 479 F.2d 1193 (1973). Police stations are not theatrical casting offices; a reasonable effort to harmonize the lineup is normally all that is required. *See United States v. Jackson, supra*, 509 F.2d at 505. The District Court found that the makeup of the lineup did not offend constitutional standards of due process and we cannot say such finding was clearly erroneous. *See United States v. Green*, 526 F.2d 212, 216 (8th Cir. 1975); *United States v. Kopacsi*, 488 F.2d 900 (5th Cir. 1973), *cert. denied*, 416 U.S. 987, 94 S.Ct. 2393, 40 L.Ed.2d 765 (1974); *Reynolds v. Lockhart*, 470 F.2d 161, 162 (8th Cir. 1972).

 Even if the lineup was to a degree suggestive because appellant's receding hairline was the common denominator and most vivid descriptive fact in the memory of the witnesses, the District Court did not err in admitting evidence of the out-of-court identifications. External factors adduced in evidence at trial demonstrate that the witnesses had a sufficient opportunity to view appellant during the robbery to warrant a conclusion that the lineup identification was reliable enough to withstand any due process challenge. *See Neil v. Biggers, supra*, 409 U.S. at 199–200, 93 S.Ct. 375.[10]

---

9. On direct examination of the eyewitnesses, the government brought out that each had made a prior out-of-court identification at a lineup. Having done so, the *per se* exclusionary rule applies and evidence of an independent source for the in-court identification is unavailing if the reliability of the lineup identification was prejudicially tainted. *Gilbert v. California*, 388 U.S. 263, 273–74, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). *See also* N. Sobel, Eye-Witness Identification (1972).

10. The factors to be considered in determining the reliability of an identification include,

the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers, supra*, 409 U.S. at 199–200, 93 S.Ct. at 382.

Goppert bank employee Kenneth Coleman was in the presence of the robbers for five to eight minutes and was from four to five feet away from them. Mark Lagergren observed appellant for three to four minutes from approximately ten feet. Dennis Maher was approximately five feet from the robber, but testified that he observed him for only a few seconds. Although the lineup was held more than three months after the Goppert robbery, and the opportunity for Maher to observe the robber during the crime was minimal, we note that Coleman and Lagergren were in the robber's presence for a considerably longer period of time and were able to observe him at close range. Coleman and Lagergren also gave detailed descriptions fitting appellant to the police immediately after the robbery. Finally, we note that the identifications at the lineup were positive ones. It is true that the robber was wearing a nylon stocking mask. Bank surveil-

### III. *Voir Dire*

Appellant contends the District Court improperly refused to permit his counsel to question the panel of veniremen regarding pretrial publicity. The court did, however, permit counsel to submit voir dire questions that were then directed to the jury panel.[11]

 The District Court has discretion to permit the parties to conduct the voir dire examination or to conduct the examination itself. *See* Fed.R.Crim.P. 24(a). Decisions regarding the form and scope of a voir dire examination are likewise left largely to the discretion of the District Court, *see Ham v. South Carolina*, 409 U.S. 524, 527–28, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973); *Aldridge v. United States*, 283 U.S. 308, 310, 51 S.Ct. 470, 75 L.Ed. 1054 (1931); *United States v. Cosby*, 529 F.2d 143, 147–48 (8th Cir.), *cert. denied*, 426 U.S. 935, 96 S.Ct. 2647, 49 L.Ed.2d 386 (1976); and error will be found only if an abuse of that discretion resulted in substantial prejudice to the defendant. *See United States v. Brown*, 540 F.2d 364, 379 (8th Cir. 1976); *United States v. Crow Dog*, 532 F.2d 1182, 1198 (8th Cir. 1976); *United States v. Bear Runner*, 502 F.2d 908, 911 (8th Cir. 1974); *United States v. Nance*, 502 F.2d 615, 620 (8th Cir. 1974), *cert. denied*, 420 U.S. 926, 95 S.Ct. 1123, 43 L.Ed.2d 396 (1975). We have examined the record of voir dire and are satisfied that the procedure followed complies fully with Fed.R. Crim.P. 24(a). Following its principal inquiry, the District Court gave counsel an opportunity to request additional questions. Again, following supplemental questions that covered the subject matter requested by defense counsel, the District Court asked if there were "any additional questions the defendant would like to have asked in this case." Defense counsel asked only that the court inquire whether any members of the panel knew three defense witnesses; the District Court complied. We find no error. *See United States v. Powers*, 482 F.2d 941, 944 (8th Cir.), *cert. denied*, 415 U.S. 923, 94 S.Ct. 1426, 39 L.Ed.2d 479 (1973); *United States v. Addington*, 471 F.2d 560, 569–70 (10th Cir. 1973); *United States v. Beneke*, 449 F.2d 1259, 1261 (8th Cir. 1971); *United States v. Mattin*, 419 F.2d 1086, 1087 (8th Cir. 1970); *Ross v. United States*, 374 F.2d 97, 104 (8th Cir.), *cert. denied*, 389 U.S. 882, 88 S.Ct. 130, 19 L.Ed.2d 177 (1967). *See also* C. Wright, 2 Federal Practice & Procedure § 381 (1969).

### IV. *Closing Argument*

During his closing arguments the attorney for the government told the jurors that he, the public, and the defense counsel were looking to them as a "shield" to make the final decision regarding appellant's guilt, and that they were the public's last shield. Appellant's counsel objected, but did not request a mistrial. The court instructed the jury to "disregard about the jury being a shield." Appellant now contends the prosecutor's remarks were improper and constitute grounds for a reversal.

 A trial court has broad discretion in controlling closing arguments, and, absent a clear showing of abuse, that discretion will not be overturned. *United States v. Robinson*, 539 F.2d 1181, 1185 (8th Cir. 1976); *United States v. Delay*, 500 F.2d 1360, 1367 (8th Cir. 1974); *United States v. Pruitt*, 487 F.2d 1241, 1246 (8th Cir. 1973); *Bryant v. United States*, 462 F.2d 433, 436 (8th Cir. 1972); *United States v. Turchick*, 451 F.2d 333, 339 (8th Cir. 1971). The test to be applied is "whether the argument com-

---

lance photographs admitted into evidence, however, show that the robber's physical features could be readily discerned through the mask, and in fact it was the identification of appellant in one photograph by his mother that led to his arrest.

11. Prior to trial defense counsel had expressed concern about prejudice to appellant as a result of the substantial publicity which the activities of his co-indictee Sylvester Young had re-

ceived. Appellant was ultimately tried alone but the evidence presented against him included testimony about Young's part in the robberies. During voir dire the District Court vigorously instructed the jury that Young's activities prior to and subsequent to his arrest could not be imputed to appellant and inquired whether the publicity about Young would have an adverse impact on the minds of the jurors trying appellant.

plained of was so offensive as to deprive [appellant] of a fair trial." *United States v. Matousek*, 483 F.2d 286, 288 (8th Cir. 1973); *Isaacs v. United States*, 301 F.2d 706, 736 (8th Cir.), *cert. denied*, 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58 (1962). We must assess the effect of any alleged error "in 'the context of the entire trial, and not in isolation'." *United States v. Parr*, 516 F.2d 458, 471 (5th Cir. 1975); *United States v. Phillips*, 482 F.2d 191, 196 (8th Cir.), *cert. denied*, 414 U.S. 1114, 94 S.Ct. 846, 38 L.Ed.2d 741 (1973).

Unless calculated to inflame, an appeal to the jury to act as the conscience of the community is not impermissible, and we cannot say that the remarks in the present case exceeded permissible bounds of advocacy. *See United States v. Alloway*, 397 F.2d 105, 113 (6th Cir. 1968); *Henderson v. United States*, 218 F.2d 14, 19 (6th Cir.), *cert. denied*, 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253 (1955). *See also Stassi v. United States*, 50 F.2d 526, 532 (8th Cir. 1931). No motion for a mistrial was made, and under the circumstances the court's admonition to the jury to "disregard about the jury being a shield" was sufficient. *See United States v. Stevens*, 509 F.2d 683, 686 n. 1 (8th Cir.), *cert. denied*, 421 U.S. 989, 95 S.Ct. 1993, 44 L.Ed.2d 479 (1975); *Blassingame v. Estelle*, 508 F.2d 668, 669 (5th Cir. 1975); *Koolish v. United States*, 340 F.2d 513, 533 (8th Cir.), *cert. denied*, 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724 (1965); *United States v. Wright*, 309 F.2d 735, 738 (7th Cir. 1962), *cert. denied*, 372 U.S. 929, 83 S.Ct. 873, 9 L.Ed.2d 733 (1963).

Affirmed.